UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 09-11987-RWZ


EVERETT H. CONNOLLY

v.

GARY RODEN


MEMORANDUM OF DECISION

January 11, 2013


ZOBEL, D.J.

Petitioner Everett H. Connolly was convicted in 2006 of cocaine distribution and cocaine trafficking. His motion for a new trial was denied, and his convictions were affirmed on appeal by the Supreme Judicial Court of Massachusetts ("SJC") in a published opinion. Connolly now seeks a writ of habeas corpus, claiming that his convictions were obtained in violation of his constitutional rights.

I.      **Legal Standard**

A federal court may only grant habeas relief on one of two grounds with respect to a claim adjudicated on the merits in state court. First, the federal court may grant relief if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). An "unreasonable application" must be more than merely incorrect; it must be "objectively unreasonable." Williams v. Taylor,

529 U.S. 362, 409 (2000). Second, the federal court may grant relief if the state court's

decision was based on "an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Even if the state court's error is unreasonable, that error will not justify relief if it

was harmless. To decide if an error asserted on collateral review was harmless, the

federal habeas court asks whether the error "had substantial and injurious effect or

influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623

(1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

## II.    Analysis

All of the claims in Connolly's petition were considered and rejected by the SJC,

either for lack of a constitutional violation or for harmless error. See Commonwealth v.

Connolly, 913 N.E.2d 356 (Mass. 2009).[1]

### A.  Fourth Amendment: GPS Tracking

Connolly first claims that his Fourth Amendment rights were violated when the

police investigating him installed a GPS tracking device on his van. The SJC's opinion

summarized the relevant facts as follows:

> State and local police investigated the defendant [Connolly], a suspected drug
> dealer, for more than a year. The investigation included surveillance of the
> defendant, controlled drug purchases by multiple confidential informants, and
> observation by police officers of the defendant engaged in numerous apparent
> narcotics transactions using his minivan. Toward the end of the surveillance
> period, on August 24 and 25, 2004, Officer Jennifer Margeson, a reserve officer
> with the Orleans police department, working as an undercover officer with the

---

[1] Respondent does not contend that any procedural bars prevent reaching the
merits of Connolly's claims. It appears that the claims were properly exhausted and
Connolly's petition was timely filed.

Cape and Islands drug task force, made additional controlled purchases of "crack" cocaine from the defendant. Based on the lengthy investigation, a State police trooper submitted a search warrant application to place a GPS monitoring device on the defendant's minivan for fifteen days. The warrant was issued on August 30, 2004, and on September 7, 2004 an "addendum" was filed with the court stating that the GPS device had been installed in the defendant's minivan on August 31, 2004, monitoring was ongoing, and a "full" return would be made by the end of the fifteen-day period. Such a return was made on September 14, 2004, within the fifteen-day period.

Connolly, 913 N.E.2d at 361-62 (footnote omitted). Connolly does not challenge any of the underlying facts recited by the SJC. However, he argues that the warrant to attach the GPS device was not supported by probable cause, that the search continued after the warrant expired, and that the use of a GPS tracking device violated his Fourth Amendment rights under United States v. Jones, 132 S. Ct. 945 (2012).

First, Connolly's claim is barred because habeas relief cannot be granted on the ground that evidence obtained in violation of the Fourth Amendment was introduced at trial. Stone v. Powell, 428 U.S. 465 (1976).[2] Moreover, the SJC's decision rejecting Connolly's Fourth Amendment claim was not objectively unreasonable. The SJC reasonably concluded that the affidavit submitted for the warrant "contained ample evidence to support a finding of probable cause," based on the information it set forth regarding the lengthy investigation into Connolly's drug transactions and specifically describing drug transactions Connolly conducted from his minivan. Connolly, 913 N.E.2d at 363-64. The SJC also correctly determined that the search remained within

---

[2] An exception to this doctrine exists where the state has not "provided an opportunity for full and fair litigation of a Fourth Amendment claim." Stone, 428 U.S. at 494. Connolly does not argue that exception applies here—nor can he, given that his suppression arguments were fully litigated before the trial court and before the SJC.

the bounds set by the warrant. The warrant authorized the investigating officers to install the GPS device on Connolly's minivan within seven days and monitor it for fifteen days. The warrant was issued on August 30, 2004; according to the returns filed, the officers installed the GPS device on August 31, 2004, and recorded data through September 9, 2004. The SJC therefore determined that the officers complied with the warrant, see id. at 370-72, and Connolly gives no reason to find that determination objectively unreasonable. Finally, the Supreme Court's recent decision in United States v. Jones does not help Connolly. The Court in Jones determined only that installing a GPS device on a vehicle was a Fourth Amendment search. Jones, 132 S. Ct. at 949. In Jones, that search was not authorized by a warrant. Id. at 947 n.1. In Connolly's case, however, the search was properly authorized by warrant; it was not unreasonable for the SJC to determine that a GPS search carried out under a valid warrant was not a Fourth Amendment violation.[3]

## B. Sixth Amendment Confrontation Clause: Chemical Analyses

At Connolly's trial, the prosecution introduced chemical analyses from the state crime lab, in the form of sworn affidavits, showing that a substance Connolly sold to an undercover officer on two occasions was cocaine and that a substance discovered in a search of Connolly's minivan was 124.31 grams of cocaine. There was no evidence that the state's chemical analysts were unavailable to testify in person, and Connolly

---

[3] In any case, the SJC decided Connolly's case before Jones was issued. Jones therefore was not "clearly established Federal law" at the relevant time. See Greene v. Fisher, 132 S. Ct. 38 (2011) (holding that § 2254(d)(1) looks to clearly established law at the time of the state court's decision).

had no previous opportunity to cross-examine them. As such, introducing the affidavits violated Connolly's Confrontation Clause rights under <u>Melendez-Diaz v. Massachusetts</u>, 129 S.Ct. 2527 (2009).

The SJC recognized that Connolly's constitutional right to confront his accusers was violated. <u>Connolly</u>, 913 N.E.2d at 374-75. However, it found the error harmless. <u>Id.</u> at 375-76. In making that determination, it applied the "harmless beyond a reasonable doubt" standard appropriate on direct review. <u>Id.</u> at 375; <u>see</u> <u>Chapman v. California</u>, 386 U.S. 18 (1967). Connolly cannot obtain federal habeas relief unless that harmlessness determination by the SJC was objectively unreasonable under § 2254(d). <u>Mitchell v. Esparza</u>, 540 U.S. 12, 17-18 (2003); <u>see</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 119-120 (2007). In addition, Connolly cannot obtain federal habeas relief unless the error had a "substantial and injurious effect or influence" on the verdict. <u>Brecht</u>, 507 U.S. at 623 (quoting <u>Kotteakos</u>, 328 U.S. at 776). The Supreme Court has clarified that the latter inquiry under <u>Brecht</u> "obviously subsumes" the former inquiry under § 2254(d), and so only the <u>Brecht</u> test must be applied. <u>Fry</u>, 551 U.S. at 120; <u>see</u> <u>Foxworth v. St. Amand</u>, 570 F.3d 414, 435-36 (1st Cir. 2009).

Here, the admission of the chemical analyses caused no substantial injury. Other evidence presented at trial clearly established that the substances for which Connolly was charged did in fact contain cocaine. With respect to the substance sold to the undercover officer, the officer testified that Connolly himself told her the substance was crack cocaine. Furthermore, "Detective Lieutenant John Allen, an officer with twenty-five years of experience in narcotics investigations, testified that he field tested

the substances at the time of each purchase and each tested positive for cocaine."

Connolly, 913 N.E.2d at 375. With respect to the substance found in Connolly's

minivan:

> Sergeant John Milos, a police officer with approximately seventeen years of experience in narcotics investigations . . . testified that he field tested chunks of the white substance recovered from the vehicle immediately after it was seized, . . . and that the substance tested positive for cocaine. He identified the ball of cocaine at trial as the one that was recovered from the minivan. Trooper James Bazzinotti, who had thirteen years of experience conducting drug searches with a narcotics detection canine, also testified that the substance appeared to him to be cocaine.

Id.  And of course, the substances themselves were introduced into evidence and the

jury was able to observe them. Under the circumstances, given the direct and

circumstantial evidence that the jury saw showing the substances at issue were

cocaine, the additional introduction of the chemical analyses did not have a substantial

and injurious effect on the verdict.

The weight of the substance found in Connolly's minivan was also at issue,

because based on that weight Connolly was convicted of trafficking in cocaine between

one hundred and two hundred grams. The SJC summarized the evidence (other than

the analyst's affidavit) going to the weight of the cocaine as follows:

> Trooper Bazzinotti testified that, when he found the cocaine in the minivan, it was wrapped in electrical tape. He examined it and it looked "like a baked potato"; it was "bigger than a baseball." The trooper described the cocaine after the electrical tape was unwound as a "large ball, hard," and "a very solid piece of . . . block cocaine."

> The unwrapped cocaine was introduced in evidence and taken to the jury room where the jurors could see the amount for themselves, although after the chemical analysis the cocaine was "more flaked, more crushed up . . . the original package was more solid.

6

Id. at 376. The cocaine that the jury examined apparently weighed 124.31 grams,

nearly twenty-five grams more than the charged threshold.[4] Evidence was introduced

that seven grams make up a quarter ounce, from which any jurors unfamiliar with the

metric system could extrapolate that one hundred grams was less than four ounces. Id.

at 375. Moveover, in his closing argument Connolly's counsel apparently accepted the

weight of 124.31 grams as correct. See Docket # 24 at 925 ("The Commonwealth has

to prove to you beyond a reasonable doubt that Mr. Connolly knew that those 124

grams was (sic) in his vehicle on the morning in question."). Although the harmless-

error question is closer here, I conclude that the erroneous admission of the chemical

analyses did not have a substantial and injurious effect on the verdict with respect to

the weight of cocaine charged. The analyses were undoubtedly persuasive in

convincing the jury that the cocaine found in Connolly's van weighed over one hundred

grams. But considering all the other evidence from which the jury could have estimated

the weight of the cocaine—including especially the jurors' opportunity to directly

examine the cocaine itself—the injurious effect of admitting the chemical analyses was

not substantial enough to allow habeas relief under Brecht. See Connolly, 913 N.E.2d

at 376 (noting that jurors can make judgments about size and weight based on

adequate evidence, and concluding that the error in admitting the chemical analyses

---

[4] To give a sense of the weights involved: a new penny weighs 2.5 grams. See U.S. Mint, Coin Specifications, http://www.usmint.gov/about_the_mint/?action=coin _specifications (last visited December 3, 2012). The charged threshold of one hundred grams is the weight of forty pennies; the cocaine that the jury saw weighed about as much as fifty pennies.

was harmless beyond a reasonable doubt).

### C.  Sixth Amendment Confrontation Clause: Confidential Informant

As his third ground of relief, Connolly argues that his Confrontation Clause rights

were violated when the state failed to disclose the identity of a confidential informant.

The SJC described the relevant facts as follows:

> During trial, Margeson, the undercover officer, testified that she had been
> introduced to the defendant by a confidential informant prior to the two controlled
> purchases that she made from the defendant. This testimony was struck. . . . The
> defendant contends that nondisclosure of the informant prejudiced his ability to
> pursue his defense of mistaken identity because he was unable to cross-
> examine the confidential informant, and also was unable to cross-examine
> Margeson concerning the certainty of her identification.
>
> The judge ordered the prosecutor either to disclose the informant's identity or
> not to question Margeson regarding the earlier purchase. The prosecutor
> selected the latter option. The judge allowed the defendant to conduct an
> extensive voir dire of Margeson in respect to the extent of her interaction with
> the defendant at the earlier purchase, and the certainty of her identification of
> the defendant. The defendant chose not to cross-examine Margeson further
> about the strength of her identification.

Connolly, 913 N.E.2d at 372-73 (footnote omitted). Connolly does not challenge the

facts recited by the SJC, nor does he provide further argument explaining this ground

for relief in his brief.

The Constitution requires that the prosecution disclose the identity of a

confidential informant where such disclosure is "relevant and helpful to the defense."

Roviaro v. United States, 353 U.S. 53, 60-61 (1957). Whether disclosure is required

depends on "the particular circumstances of each case," including "the crime charged,

the possible defenses, the possible significance of the informer's testimony, and other

relevant factors." Id. at 62. Here, the SJC determined that disclosure was not required

8

because the informant was not a percipient witness to the crimes charged; instead, the informant was involved in an earlier, uncharged transaction. The SJC also determined that disclosure of the informant would not have been helpful to the defense, since evidence that Connolly had participated in yet another cocaine transaction with Margeson would have strengthened Margeson's identification of Connolly and fortified the government's case that Connolly was involved in drug distribution.

Unlike the informant in <u>Roviaro</u>, whose identity the Supreme Court required the government to disclose, the informant here was not an active participant in any of the charged transactions. His only interaction with the case was in introducing Margeson to Connolly, and Margeson's testimony to that effect was struck. Furthermore, Connolly does not explain why the confidential informant's testimony could have been helpful to him when the informant was not present for either of the charged offenses. Considering all the relevant circumstances, it was not objectively unreasonable for the SJC to conclude that the prosecution did not violate Connolly's rights by failing to disclose the informant.

### D.  Fifth Amendment: Post-Warning Silence

Connolly's fourth ground for relief is based on a violation of his rights under <u>Doyle v. Ohio</u>, 426 U.S. 610 (1976). In that case, the Court held that the prosecution may not introduce evidence that a defendant exercised his right to remain silent after receiving Miranda warnings. The SJC described the facts underlying this ground for relief in its opinion:

> At trial, a police detective testified that after the defendant's arrest and after receiving Miranda warnings, the defendant stated that he "did not have anything

9

to say at that time." . . . Before the defendant could voice an objection to the improper testimony, the judge, sua sponte, held a lobby conference and offered the defendant several options for curing the <u>Doyle</u> violation. The defendant elected a jury instruction on his right to remain silent. The judge immediately and forcefully instructed the jury that they could not consider the defendant's exercise of his right to remain silent. Defense counsel indicated that he was content with this instruction.

<u>Connolly</u>, 913 N.E. 2d at 373-74. Again, Connolly does not challenge these facts or provide further argument in his brief regarding this ground for relief.

As the SJC recognized, "[i]ntroducing evidence of a suspect's invocation of his right to remain silent is a serious error that may result in reversal of a conviction." <u>Id.</u> at 374. Because defense counsel indicated he was content with the instruction given by the trial judge, the SJC considered any objection waived. It therefore reviewed the asserted constitutional error to determine whether it raised "a substantial risk of a miscarriage of justice." <u>Id.</u> (citing <u>Commonwealth v. Brown</u>, 884 N.E.2d 488, 494 (Mass. 2008)). Given the brief offending statement, the judge's curative instruction, and the other evidence of Connolly's guilt, the SJC found no substantial risk of miscarriage of justice. <u>Id.</u> The SJC's opinion continues: "Had the error been preserved, the result would have been no different." <u>Id.</u> In other words, the SJC also concluded that the error was harmless beyond a reasonable doubt (the standard applied on direct review to constitutional challenges that are properly preserved). <u>See</u> <u>Chapman</u>, 386 U.S. at 24; <u>Commonwealth v. Vasquez</u>, 923 N.E.2d 524, 530 (Mass. 2010) (explaining the different standards of review). In any case, as discussed above, a federal court sitting in habeas need only consider whether the asserted error was harmless under <u>Brecht</u>. <u>Fry</u>, 551 U.S. at 120; <u>see</u> <u>Delaney v. Bartee</u>, 522 F.3d 100 (1st Cir. 2008) (applying <u>Brecht</u> to an

asserted error that the SJC reviewed under the "substantial risk of a miscarriage of justice" standard).

Here, the violation of Connolly's rights under <u>Doyle</u> did not have a substantial and injurious effect. As the SJC noted, the single reference to Connolly's post-arrest silence was "brief and interrupted," <u>Connolly</u>, 913 N.E.2d at 374; and it was immediately addressed by the judge's curative instruction, which Connolly approved. Connolly's post-arrest silence was never even obliquely mentioned again. Considering these circumstances, the error was harmless under the <u>Brecht</u> standard.

### E.  Sixth Amendment: Ineffective Assistance of Counsel

Connolly's fifth and final ground for relief claims his trial counsel was ineffective because he failed to sufficiently cross-examine one government witness, waived objections to (unspecified) constitutional errors, and failed to object to the testimony discussed above regarding Connolly's post-arrest silence. The SJC found that the alleged errors by Connolly's trial counsel did not constitute ineffective assistance; indeed, it found the proposed objections would have been unsuccessful. <u>Connolly</u>, 913 N.E.2d at 372 n.21, 374 n.24. Connolly does not provide further argument concerning this ground of relief in his brief; he gives no reason, and I have found none, to conclude that the SJC's determination was objectively unreasonable. Connolly therefore is not entitled to habeas relief.

### III.    Conclusion

Connolly's petition for a writ of habeas corpus (Docket # 1) is DENIED.

January 11, 2013                         /s/Rya W. Zobel
          DATE                           RYA W. ZOBEL
                               UNITED STATES DISTRICT JUDGE